Filed 10/29/24  State Farm Mutual Automobile Ins. Co. v. Bajah CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> BRIAN BAJAH, <br><br> Defendant and Appellant. | B332069 <br><br> (Los Angeles County Super. Ct. No. 19STCV31987) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle C. Kim, Judge.  Affirmed.

Richardson, Fair & Cohen and Stephen Kalpakian for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

Defendant and appellant Brian Bajah (Bajah) appeals from the denial of his motion to quash service of summons and to set aside a default judgment entered against him. We consider whether substantial evidence supports the trial court's finding that plaintiff and respondent State Farm Mutual Automobile Insurance Company (State Farm) exercised the diligence necessary to justify service of the summons by publication.

## I. BACKGROUND

On January 27, 2019, Bajah failed to stop his automobile at a red light and collided with another vehicle driven by Wayne Muramatsu (Muramatsu). The collision, which occurred at the intersection of Venice Boulevard and Hill Street in Los Angeles, rendered Muramatsu's vehicle a total loss. State Farm, Muramatsu's insurer, investigated his claim, determined it was covered under the terms of his policy, and paid him $31,399.13 for his loss. Nine months later, in September 2019, after engaging in unsuccessful settlement discussions with Bajah's insurer, State Farm sued Bajah seeking subrogation.

Information collected at the time of the accident indicated Bajah resided in the City of Torrance. In an effort to find Bajah's current residence, State Farm searched unsuccessfully for his address on the Internet using his social security number and telephone numbers. When a postal search indicated Bajah had "moved" from his Torrance address, State Farm investigated further using "skip-tracing" techniques and discovered two other possible residences for Bajah: one in the City of Hawthorne and one in the City of Castaic. On 21 occasions between September 2019 and February 2020, State Farm attempted to serve Bajah

2

personally at the three addresses in Los Angeles County it identified—all without success.[1]

In June 2020, State Farm applied for and was granted an order allowing service by publication in The Los Angeles Independent, a weekly newspaper published in the County of Los Angeles (the county of Bajah's last known address). A copy of the summons was published in the newspaper on July 16, 23, 30, and August 6, 2020. Bajah's default was entered on December 23, 2020. Six months later, the superior court entered a default judgment for State Farm.

In November 2021, five months after entry of default judgment, Bajah moved to quash the service of summons by publication and to set aside the default judgment pursuant to Code of Civil Procedure section 473.[2] He argued he was not properly served by publication for two principal reasons. First, he maintained State Farm failed to exhaust all avenues before seeking service by publication; according to Bajah, State Farm should have, but did not, conduct a Department of Motor Vehicle or voter registration search for his current address. Second, Bajah contended the newspaper selected to effect service by publication was inadequate for the task: The Los Angeles Independent had a circulation of 32,600, which meant it was "seen by only .003% to .008% of the population of Los Angeles

---

[1] State Farm tried to serve Bajah three times at the Torrance address, eight times at the Hawthorne address, and ten times at the Castaic address.

[2] Undesignated statutory references that follow are to the Code of Civil Procedure.

3

City and County."[3]  Bajah additionally argued the newspaper was not distributed in the City of Hawthorne, where he lived for approximately the last eight years.

In a supporting declaration, Bajah stated he had never heard of The Los Angeles Independent.  In addition, he declared he had never been served with any legal process in connection with State Farm's lawsuit and had "not avoided service of process of any kind."  Attached to his declaration was a redacted photocopy of his current driver's license, which showed he resided in Hawthorne but did not show his street address.

Bajah's motion was also supported by a declaration from his attorney.  Attached to his attorney's declaration were printouts of pages from different Internet websites regarding The Los Angeles Independent and its parent company.  The pages from the parent company's website included a map of the Los Angeles area and a list of Los Angeles zip codes where its publications were distributed.[4]  Among the listed zip codes was the zip code displayed on the photocopy of Bajah's driver's license.

---

[3]  Bajah stated he relied on information from the United States Census Bureau but did not identify a particular document or Internet page from which the proffered percentage figures were derived.  Bajah also did not submit any documentary evidence to support his percentages claim or request the trial court take judicial notice of any facts from sources of reasonably indisputable accuracy.

[4]  The copy of the map included in Bajah's appendix is largely illegible.

4

State Farm opposed defendant's motion for relief. State Farm argued it exercised reasonable diligence in attempting to locate and serve Bajah. Among other things, State Farm recounted how it attempted to personally serve Bajah on 21 occasions at three different addresses, including one at which the United States Post Office affirmed he received mail. State Farm also observed that Bajah's own supporting exhibits showed that the Los Angeles Independent was distributed in Hawthorne and in the zip code identified on his driver's license.

In his reply, Bajah argued the default judgment was void on its face because State Farm chose a newspaper that was least likely to give him actual notice. He further argued State Farm misread his supporting exhibits about where The Los Angeles Independent was circulated and re-asserted that those exhibits showed the newspaper was not distributed in Hawthorne.[5]

On April 12, 2023, the trial court held a hearing on Bajah's motion to quash service of summons and set aside the default judgment.[6] Because Bajah's argument that he never received actual notice of the lawsuit prior to entry of the default judgment was raised for the first time in his reply papers, the court continued the hearing on the motion so that the parties could brief the issue.

---

[5] The copy of the distribution map submitted with Bajah's reply is largely illegible.

[6] The record on appeal does not include a transcript of the April 12, 2023, hearing or a minute order memorializing the proceedings. It includes only an unsigned copy of a tentative order dated April 11, 2023, continuing the motion.

5

In its supplemental opposition, State Farm argued Bajah had actual notice of the lawsuit prior to entry of default judgment. State Farm related how it had remained in communication with Bajah's insurer after filing suit and repeatedly sent copies of the complaint to Bajah's insurer at the latter's request. In addition to engaging in periodic settlement discussions, State Farm's attorneys also kept Bajah's insurer informed of developments in the case. For example, in April 2020, State Farm's lawyers advised the company was proceeding with service by publication (and later sent proof of publication to Bajah's insurer). On March 3, 2021, counsel for State Farm advised Bajah's insurer the company had submitted a "Default Judgment package" to the trial court. On April 5, 2021, more than two months before entry of default judgment, Bajah's insurer called State Farm's counsel to advise that Bajah was unable to contribute to a settlement of the lawsuit. Relying on that April 5 communication from Bajah's insurer, State Farm argued Bajah had actual notice of the lawsuit prior to entry of default judgment.[7]

Bajah filed a supplemental reply in support of his motion to quash. Bajah contended the attorney declaration supporting State Farm's supplemental opposition should be stricken. Among other things, Bajah claimed the attorney lacked personal knowledge of the facts asserted in his declaration and that his

---

[7] In support of its supplemental opposition, State Farm submitted a declaration from one of its attorneys. The attorney described in detail the procedures used, and records kept, by his firm in connection with client-related communications. The attorney did not submit any exhibits with his declaration.

6

statements constituted inadmissible hearsay. Bajah did not file concurrently with his supplemental reply a set of formal evidentiary objections to specific passages in the declaration submitted by State Farm's attorney.

On May 22, 2023, the trial court held the continued hearing on Bajah's motion to quash service of summons and set aside the default judgment.[8] After hearing oral argument from the parties, the court adopted its tentative ruling as its final order and denied the motion.

The trial court reasoned service of summons by publication was warranted because State Farm exercised the diligence necessary to justify resort to such service. The court additionally found State Farm's selection of The Los Angeles Independent was reasonably calculated to provide notice.

The court declined to set aside the default judgment because Bajah did not meet his burden to show his purported lack of actual notice was not caused by avoidance of service or inexcusable neglect; as the court explained, Bajah's declaration stated only that "'he had not avoided service.' [Citation.] He does not offer evidence regarding inexcusable neglect." The court additionally found Bajah had actual notice of the lawsuit prior to the judgment's entry as established by the evidence regarding, among other things, the April 5, 2021, call from Bajah's insurer advising that Bajah could not contribute to a settlement. Finally, the court ruled (a) State Farm's attorney established the necessary foundation for his testimony about the April 5, 2021,

_____

[8]      The record on appeal does not include a transcript of the May 22, 2023, hearing; it includes only a copy of the associated minute order.

7

call and (b) the advisement made by Bajah's insurer was admissible as an authorized admission.

## II.  DISCUSSION

Bajah maintains reversal is required because substantial evidence supported his motion to quash and the default judgment was therefore void as a matter of law.  Bajah misapprehends the showing that must be made on appeal from the trial court's order.  The issue before us is not whether substantial evidence supports his motion, but whether substantial evidence supports the trial court's ruling allowing service by publication.  So correctly framed, there is such evidence.  State Farm searched for Bajah's current address utilizing multiple resources and, after it identified three possible residences, it repeatedly attempted to serve him at each of those residences.  Bajah's remaining contentions of error are forfeited for failure to raise them in the trial court, to support them with reasoned argument, and to back them with an adequate record for review.

### A.    *Service of Process and Reasonable Diligence*

"'[C]ompliance with the statutory procedures for service of process is essential to establish personal jurisdiction.  [Citation.] Thus, a default judgment entered against a defendant who was not served with a summons in the manner prescribed by statute is void.  [Citation.]' [Citation.]" (*Ellard v. Conway* (2001) 94 Cal.App.4th 540, 544; accord, *Calvert v. Al Binali* (2018) 29 Cal.App.5th 954, 961-962.)

Section 415.10 et seq. governs the manner of service of a summons.  If personal service cannot be effected and substitute service proves impossible, service may be effected by publication

8

if approved by the trial court.  (§ 415.50, subd. (a) ["A summons may be served by publication if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified in [section 415.10 et seq.] . . ."]; *Watts v. Crawford* (1995) 10 Cal.4th 743, 748-749 & fn. 5.)

"'The term "reasonable diligence" . . . denotes a thorough, systematic investigation and inquiry conducted in good faith by the party or his agent or attorney.  [Citations.]'" (*Watts, supra,* 10 Cal.4th at 749, fn. 5.)  Exhaustion of every available avenue to discover the current address of the party to be served is not required, however.  (*Ellard, supra,* 94 Cal.App.4th at 545.)  "'Two or three attempts to personally serve a defendant at a proper place ordinarily qualifies as ""reasonable diligence.""' [Citation.]'" (*Rodriguez v. Cho* (2015) 236 Cal.App.4th 742, 750; accord, *Rios v. Singh* (2021) 65 Cal.App.5th 871, 877, 881 [reasonable diligence established where plaintiff hired two private investigators "to locate and serve" the defendant and they made "numerous" attempts [i.e., four attempts over three days] to effectuate service].)

If the plaintiff demonstrates reasonable diligence, the trial court "shall order the summons to be published in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served."  (§ 415.50, subd. (b); see also Judicial Council of Cal., com., foll. § 415.50 ["Publication of summons must be made in a named newspaper of general circulation [citation], published in this state [citations], for the period prescribed by Section 6064 of the Government Code (once

9

a week for four successive weeks)"][9].)  "Although section 415.50 provides that the summons must be published in a designated newspaper that is 'most likely to give actual notice' to the defendant, it does not require that the defendant actually see the publication."  (*Rios*, *supra*, 65 Cal.App.5th at 882.)  In fact, California courts have recognized that service by publication is unlikely to result in actual notice.  (See, e.g., *Watts*, *supra*, 10

---

[9]     The Government Code provides two different definitions of a "newspaper of general circulation."  (Gov. Code, §§ 6000 [defining a "'newspaper of general circulation'" as one "published for the dissemination of local or telegraphic news and intelligence of a general character, which has a bona fide subscription list of paying subscribers, and has been established, printed and published at regular intervals in the State, county, or city where publication, notice by publication, or official advertising is to be given or made for at least one year preceding the date of the publication, notice or advertisement"], 6008, subd. (a) ["a 'newspaper of general circulation'" must meet all of the following criteria: "[¶] (1) It is a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, which has a bona fide subscription list of paying subscribers and has been established and published at regular intervals of not less than weekly in the city, district, or public notice district for which it is seeking adjudication for at least three years preceding the date of adjudication.  [¶] (2) It has a substantial distribution to paid subscribers in the city, district, or public notice district in which it is seeking adjudication.  [¶] (3) It has maintained a minimum coverage of local or telegraphic news and intelligence of a general character of not less than 25 percent of its total inches during each year of the three-year period.  [¶] (4) It has only one principal office of publication and that office is in the city, district, or public notice district for which it is seeking adjudication"].)

10

Cal.4th at 749, fn. 5 ["it is generally recognized that service by publication rarely results in actual notice"]; *County of Riverside v. Superior Court* (1997) 54 Cal.App.4th 443, 450 ["[w]e think it safe to say that there is really little expectation that a defendant so served will in fact acquire actual notice from the publication"].)

 *Giorgio v. Synergy Management Group, LLC* (2014) 231 Cal.App.4th 241 illustrates circumstances in which a reviewing court determined a trial court authorization for service by publication was proper.  In that case, the plaintiff (1) searched for any addresses associated with the defendant; (2) performed a search online and was able to locate another address associated with the defendant; (3) attempted to serve the defendant by mail at the newly located address "but received a 'Return to Sender Unclaimed' envelope from the United States Postal Service"; (4) verified with the United States Postal Service that the defendant still received mail at the newly located address; and (5) unsuccessfully attempted personal service at the newly located address seven times, using two different process servers.  (*Id.* at 248-249; compare *Olvera v. Olvera* (1991) 232 Cal.App.3d 32, 42-43 [service by publication improper where there was no indication plaintiff employed "any of the usual means" to find defendant (e.g., searching phone books, etc.)].)  The *Giorgio* court also held selection of the Los Angles Daily Journal as a newspaper most likely to give actual notice was appropriate because plaintiff "had reason to know [defendant] resided at" a Los Angeles address, so "substantial evidence supported . . . election of a newspaper in Los Angeles."  (*Giorgio, supra,* 231 Cal.App.4th at 249; compare *Olvera*, *supra*, 232 Cal.App.3d at 42-43 [service by publication improper because although plaintiffs "repeatedly" acknowledged defendant "was no

11

longer in Riverside and admitted . . . she received mail in Pismo Beach," they served her by publication in a Riverside newspaper].)

"Whether the plaintiff exercised the diligence necessary to justify resort to service by publication depends on the facts of the case. [Citation.] The question is whether the plaintiff took the steps a reasonable person who truly desired to give notice of the action would have taken under the circumstances. [Citation.] We review a trial court's finding that the defendant could not with reasonable diligence be served by a means superior to publication for substantial evidence. [Citation.]" (*Rios*, *supra*, 65 Cal.App.5th at 880-881.)

B. *Substantial Evidence Supports the Denial of the Motion to Quash*

The record shows State Farm conducted a systematic investigation to determine Bajah's current address. It performed Internet searches, utilized skip-tracing techniques, and availed itself of services offered by the United States Postal Service. After identifying three possible addresses where Bajah might be residing, State Farm attempted over a course of several months to personally serve Bajah at each of those addresses and did so repeatedly (more than 20 separate attempts). Such perseverance constitutes a good faith attempt at personal service.

The record also shows The Los Angeles Independent was a newspaper of general circulation within the county of Los Angeles with a bona fide and not insubstantial number of paying subscribers. According to the materials submitted in support of Bajah's motion to quash, The Los Angeles Independent was distributed throughout Los Angeles County. Without knowing

12

the city in the county where Bajah was residing—Torrance, Hawthorne, Castaic or somewhere else—State Farm's selection of the Los Angeles Independent was not unreasonable given its area of distribution.  Although selecting a newspaper with greater circulation might have made the question less close of a call, we see no basis to disturb the trial court's conclusion that service by publication in the Los Angeles Independent was sufficient.

### C.    *Bajah's Remaining Arguments Are Forfeited*

Bajah contends State Farm had an ethical duty to advise Bajah's insurer it intended to seek a default judgment and failed to honor that duty.[10]  Bajah forfeited this contention by failing to raise it in the trial court.  (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 920, fn. 3 [argument forfeited for failure to raise it in the trial court].)  In addition, Bajah argues the trial court erred when it failed to strike the declaration by State Farm's counsel in support of its supplemental opposition.  Review of this argument is unwarranted because it is insufficiently presented (Bajah does not even specify which portions of the declaration he believes should have been stricken) and because we have no adequate record to evaluate it.  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956; *In re Marriage of Falcone &*

---

[10]    In making this argument, Bajah does not address evidence in the record showing that three months prior to the entry of default judgment State Farm's counsel advised Bajah's insurer it had submitted a "Default Judgment package" to the trial court.  In addition, Bajah relies on purported events at the continued hearing but, as discussed in more detail *post*, has not provided a transcript of that hearing.

*Fyke* (2008) 164 Cal.App.4th 814, 830 ["We are not bound to develop appellants' argument for them"]; see also *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Rhule v. WaveFront Technology, Inc.* (2017) 8 Cal.App.5th 1223, 1229, fn. 5; *Southern California Gas Co. v. Flannery* (2016) 5 Cal.App.5th 476, 483.)

## DISPOSITION

The judgment is affirmed.  All parties are to bear their own costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, Acting P. J.

We concur:


MOOR, J.


KIM, J.